1999 ND 113

## SPRING CREEK RANCH, LLC,
### Plaintiff and Appellee,

v.

**Zoulia V. SVENBERG, also known as Zoulia V. Swedberg; Maurilla Lundeen, also known as Marilla Lundeen; and all other persons, unknown claiming any right, title, estate, lien, or interest, in the real property described in the Complaint adverse to Plaintiff's ownership, or any cloud upon Plaintiff's title thereto, Defendants,**

**Gideon E. Swedberg; Stephen E. Swedberg; Terry Richardson, individually and a Personal Representative of the Estate of C.L. Fondable, deceased, Defendants and Appellants.**

No. 980326.

Supreme Court of North Dakota.

June 18, 1999.

Rehearing Denied July 13, 1999.

Jon Bogner of Kubik, Bogner, Ridl & Selinger, Dickinson, for plaintiff and appellee.

John L. Sherman of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendants and appellants.

KAPSNER, Justice.

[¶ 1] Gideon E. Swedberg, Stephen E. Swedberg, and Terry Richardson, individually and as the personal representative of the estate of C.L. Fondable, appealed from summary judgment granted in favor of Spring Creek Ranch (Spring Creek). The trial court decided as a matter of law Spring Creek made a reasonable inquiry to locate the addresses of the mineral interest owners under N.D.C.C. § 38–18.1–06(2). Judgment was entered quieting title to an undivided one-half interest in mineral rights in favor of Spring Creek. We hold whether Spring Creek made a reasonable inquiry to locate the addresses of the mineral interest owners is a question of fact and inappropriate for summary judgment disposition. We therefore reverse the judgment and remand the quiet title action for further proceedings.

I.

[¶ 2] In 1941, Zoulia V. Svenberg and Maurilla Lundeen owned property in Bowman County described as:

<u>Township 131 North, Range 106 West</u>
Section 22: NW 1/4

On December 28, 1950, Svenberg and Lundeen conveyed the property to C.J. Clark

by warranty deed, reserving "one half of the oil & gas rights and minerals." The deed was recorded in the Bowman County Register of Deeds office on February 15, 1951.

[¶ 3] After numerous transfers, Victor R. Uttke obtained title to the property's surface and an undivided one-half interest in the minerals. Uttke filed an Affidavit of Service of Notice of Claim and Claim of Ownership under N.D.C.C. § 38–18.1 regarding Svenberg and Lundeen's "undivided one-half (½) interest in all oil, gas and all other mineral rights in, on or under" the property. Uttke stated he:

> made reasonable inquiry as to the address of Zoulia V. Svedberg, a/k/a Zoulia V. Swedberg, and Maurilla Lundee[n], a/k/a Marilla Lundeen, the last record owners of the interest claimed, whose addresses are not shown of record. That I made or caused to be made such inquiry of the Bowman County Sheriff, Bowman County Auditor, Bowman County Treasurer and Bowman County Register of Deeds and none of the aforesaid officers or the records of their office indicate any last known address.

Uttke published a Notice of Lapse of Mineral Interest and Claim of Ownership in the Bowman County Pioneer on November 18, 25, and December 2, 1989. The notice was recorded in the Bowman County Register of Deeds office. Neither Uttke nor his attorney mailed a copy of the notice to Svenberg or Lundeen.

[¶ 4] Uttke and others to whom Uttke had executed mineral deeds conveyed their interests in the minerals underlying this property to Spring Creek. Victor R. Uttke is the president of Spring Creek. On December 22, 1995, Spring Creek brought an action to quiet title in the undivided one-half mineral interest reserved by Svenberg and Lundeen. Uttke filed an affidavit as president of Spring Creek stating he made an unsuccessful reasonable inquiry to ascertain Svenberg and Lundeen's addresses. Service was by publication in the Bowman County Pioneer on December 29, 1995, January 5, 1996, and January 12, 1996.

[¶ 5] On May 28, 1996, the trial court issued its findings of fact, conclusions of law, and an order for default judgment. The court concluded Spring Creek "made a diligent, but unsuccessful effort to locate" the addresses of the mineral interest owners. Title to the mineral interests originally reserved by Svenberg and Lundeen was quieted in Spring Creek.

[¶ 6] On May 20, 1997, Gideon E. Swedberg, Stephen E. Swedberg, and Terry Richardson, individually and as the personal representative of the Estate of C.L. Fondable, filed a motion under N.D.R.Civ.P. 60 to vacate the judgment. Gideon and Stephen are the sole heirs of Svenberg's estate. C.L. Fondable was the sole heir to Lundeen's estate; however, he died October 29, 1996, leaving Terry Richardson as the sole devisee and personal representative of Fondable's estate. Gideon, Stephen, and Terry (the successors) moved the trial court for an order "allowing them to defend against the Complaint on the grounds that they were purportedly served by publication, had no knowledge of the existence of the action, and that they have a meritorious defense." They asked the trial court to declare them owners in fee simple of an undivided one-half interest in the mineral rights.

[¶ 7] The judgment was vacated in August 1997 after the trial court learned Zane Anderson, the initial trial judge who had entered default judgment in Spring Creek's favor, had been Uttke's attorney for the chapter 38–18.1 filings. The successor trial court declined to rule on the issue of mineral ownership deciding a finding on the issue was unnecessary to vacate the judgment. In March 1998, the trial court granted the successors' motion to intervene as parties to the quiet title action.

[¶ 8] On March 23, 1998, Spring Creek moved for summary judgment. The successors answered the motion arguing summary judgment should be granted in their favor. A hearing was held in May 1998, and on August 27, 1998, the trial court held "as a matter of law that [Spring Creek] made reasonable inquiry to ascertain the mineral interest owners, and that [chapter 38-18.1] was complied with strictly." The court granted Spring Creek's motion for summary judgment, denied the successors' motion, and quieted title to the mineral interest in Spring Creek. The successors appealed on October 8, 1998.

## II.

[¶ 9] In 1983, the North Dakota Legislature enacted a statute declaring any mineral interest unused for twenty or more years preceding the first publication of a notice of lapse under N.D.C.C. § 38-18.1-06 is deemed to be abandoned unless the mineral owner files a statement of claim in the register of deeds office under N.D.C.C. § 38-18.1-04. *See* N.D.C.C. § 38-18.1-02. "Title to the abandoned mineral interest vests in the owner or owners of the surface estate in the land in or under which the mineral interest is located on the date of abandonment." *Id.*

[¶ 10] At common law, mineral interests were not extinguished by lapse of time. *See generally* Vitauts M. Gulbis, J.D., Annotation, *Validity and Construction of Statutes Providing for Reversion of Mineral Estates for Abandonment or Nonuse,* 16 A.L.R. 4th 1029, § 2[a] (1982); 53A Am.Jur.2d *Mines and Minerals* § 178 (1996). Chapter 38-18.1 was a legislative change to the common law rule. Statutes created in derogation of the common law which create a forfeiture are strictly construed. *See Goodman Inv., Inc. v. Swanston Equip. Co.,* 299 N.W.2d 786, 788 (N.D.1980). Therefore, trial courts and this court must review for strict construction and application of statutory requirements.

[¶ 11] Whether the successors' interest was unused for the statutorily mandated twenty years is not in dispute in this case. However, whether Spring Creek complied with the statutory notice requirements under N.D.C.C. § 38-18.1-06 is at issue. N.D.C.C. § 38-18.1-06 requires:

1. Any person intending to succeed to the ownership of a mineral interest upon its lapse, shall give notice of the lapse of the mineral interest by publication.

2. The publication provided for in subsection 1 must be made once each week for three weeks in the official county newspaper of the county in which the mineral interest is located; however, if the address of the mineral interest owner is shown of record or can be determined upon reasonable inquiry, notice must also be made by mailing a copy of the notice to the owner of the mineral interest within ten days after the last publication is made.

3. The notice must state:

   a. The name of the record owner of the mineral interests;

   b. A description of the land on which the mineral interest involved is located; and

   c. The name of the person giving the notice.

4. A copy of the notice and an affidavit of service of the notice must be recorded in the office of the register of deeds of the county in which the mineral interest is located and constitutes prima facie evidence in any legal proceedings that such notice has been given.

[¶ 12] In May 1998, the trial court had a summary judgment hearing on whether Spring Creek effectively complied with the forfeiture provisions of N.D.C.C. chapter 38-18.1. The successors argued Spring Creek failed to make a "reasonable inquiry" to ascertain the addresses of the mineral interest owners under N.D.C.C. § 38-18.1-06(2). Both parties submitted extensive documents to the trial court in support of their motions for summary judg-

ment. The documents included a copy of the Affidavit of Service of Notice of Claim and Claim of Ownership, an accompanying affidavit of publication, the successors' affidavits, the affidavit of the Bowman County Treasurer, and the affidavit of Peter Masset, the president of Altair Corporation, the owner and holder of three separate oil and gas leases on the property. The affidavit of John L. Sherman, the successors' attorney, was also submitted, stating he had examined title to the property in the Bowman County public records. Sherman attached copies of records found during his search including warranty deeds from 1950 and 1952, a 1952 judgment and decree and the accompanying affidavits of service, 1996 oil and gas leases, a portion of Uttke's 1997 deposition, and a portion of Zane Anderson's deposition. All of the documents were considered by the trial court when deciding whether to grant the motions for summary judgment.

[¶ 13] Summary judgment is appropriate if either litigant is entitled to judgment as a matter of law, if there are no disputes about material facts or inferences to be drawn from material facts, or if resolving factual disputes would not alter the results. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551. On appeal we view the evidence in the light most favorable to the nonmoving party and therefore give the benefit of all favorable inferences to that party. *Id.*

[¶ 14] "In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate." *Hurt v. Freeland*, 1999 ND 12, ¶ 8, 589 N.W.2d 551. The moving party has the burden of demonstrating there are no genuine issues of material fact, but the opposing party must also present admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* Issues of fact may become issues of law for the court, if reasonable persons could reach only one conclusion from the facts. *Id.* at ¶ 9.

[¶ 15] Spring Creek asserts a search of the records in the Bowman County Register of Deeds office was the only search necessary to satisfy the statutory "reasonable inquiry" requirement as a matter of law. Spring Creek argues it is undisputed the only addresses of record in the Bowman County Register of Deeds office for Svedberg and Lundeen were in the warranty deed dated December 28, 1950; those addresses were Los Angeles County, California and Sedgewick County, Kansas, respectively. No street addresses appeared. Although Spring Creek contends a search of the register of deeds office was the only search necessary under the statute, an affidavit of service stated Spring Creek had checked the records at the office of the Bowman County Sheriff, the Bowman County Auditor, and the Bowman County Treasurer for Svedberg's and Lundeen's last known addresses.

[¶ 16] The successors contend a "reasonable inquiry" requires more than a search of the register of deeds office as a matter of law. Nonetheless, they assert a search of the records in the Bowman County Register of Deeds office revealed a 1952 judgment and decree listing Svedberg as a named defendant in a quiet title action. The judgment stated service of process in the action was completed "by registered mail, by mailing a copy of the Summons and Complaint to ... their respective residence and post office address, as shown in the Affidavit for Service of Summons by Publication...." The successors argue, at the very least, that document should have caused Spring Creek to search the records in the Bowman County Clerk of Court's office, where John Sherman's search revealed an affidavit and service of summons by publication in the 1952 quiet title action stating Svedberg was served at "1923 New England Street, Los Angeles, 7, Califor-

nia." Although Spring Creek's affidavit states otherwise, the successors contend that same address was also in the 1947 and 1948 records at the Bowman County Treasurer's office. The successors introduced additional documents evidencing that in February 1996, the Altair Corporation contacted the successors and obtained oil and gas leases in their one-half mineral interest. An affidavit of Peter Masset, the president of the Altair Corporation, stated the successors' addresses were found by checking United States Social Security records.[1]

■ [¶ 17] After considering the evidence presented by the parties, the trial court ruled "as a matter of law that [Spring Creek] made reasonable inquiry to ascertain the mineral interest owners, and that the statute was complied with strictly." During oral argument to this court, both parties agreed the trial court's decision whether Spring Creek made a "reasonable inquiry" to ascertain the addresses of the mineral interest owners was a question of law and not a question of fact. However, a question of fact becomes a question of law only when a reasonable person can draw a single conclusion from the evidence. *Hurt v. Freeland,* 1999 ND 12, ¶ 9, 589 N.W.2d 551. A review of the record reveals there is a dispute of facts and a reasonable person could draw more than one conclusion from the evidence in this case.

### III.

■ [¶ 18] Service of the notice of lapse under N.D.C.C. § 38–18.1–06(2) is similar to the personal service requirement under N.D.R.Civ.P. 4(e)(2)(A). N.D.C.C. § 38–18.1–06(2) mandates a copy of the notice of lapse must be mailed to the owner of the mineral interest within ten days after the last publication is made if the mineral owner's address is "shown of rec-

ord or can be determined upon reasonable inquiry." N.D.R.Civ.P. 4(e)(2)(A) states before service of summons by publication is authorized, the plaintiff must file an affidavit in the clerk of court's office stating that "after diligent inquiry personal service of the summons cannot be made upon the defendant in this state to the best knowledge, information, and belief of the affiant." N.D.C.C. § 38–18.1–06(2) and N.D.R.Civ.P. 4(e)(2)(A) require a person using publication to conduct an inquiry that is "reasonable" or "diligent" under the circumstances. Sufficiency of service is a question of fact that will not be reversed on appeal unless it is clearly erroneous. *See, e.g., McComb v. Aboelessad,* 535 N.W.2d 744, 747 (N.D.1995).

■ [¶ 19] Whether an inquiry is reasonable under the circumstances is generally a question of fact subject to the clearly erroneous standard of review. *Williston Co-op. Credit Union v. Fossum,* 459 N.W.2d 548, 552 (N.D.1990). In *Fossum,* at 552, we decided the trial court's findings of fact were not clearly erroneous and noted the trial court's findings reflected the court's conclusion that a "prudent inquiry" by the plaintiff would have disclosed an oral agreement to purchase the property had been partially performed. *See also Ryken v. State,* 305 N.W.2d 393, 395 (S.D. 1981). *But see Hunt Trust Estate v. Kiker,* 269 N.W.2d 377 (N.D.1978). In *Kiker,* at 381, we concluded "as a matter of law, that Kiker failed to make the type of inquiry which a prudent man would have made under the circumstances." However, unlike the present case, in *Kiker* a reasonable person could not have made more than one conclusion from the evidence.

[¶ 20] Whether Spring Creek made a reasonable inquiry to ascertain the addresses of the mineral interest owners is a material fact necessary to the ultimate decision whether Spring Creek strictly com-

---

1. Masset's affidavit suggests such an extensive search of social security records is a routine procedure for oil and gas corporations trying to secure property leases; however, this court is not suggesting such a search is or should be necessary to establish a surface owner has made a reasonable inquiry as required by N.D.C.C. § 38–18.1–06.

plied with N.D.C.C. chapter 38–18.1. Based on the record, reasonable minds could differ when deciding whether Spring Creek's inquiry was reasonable. Because reasonable minds could reach more than one conclusion from the facts, we conclude the trial court erred when deciding Spring Creek made a reasonable inquiry as a matter of law. Summary judgment was therefore inappropriate.

## IV.

[¶ 21] The successors also argue declaring a forfeiture of the mineral interest constitutes an unconstitutional application of N.D.C.C. chapter 38–18.1. The trial court concluded "[c]ounsel has failed to provide persuasive authority that forfeiture in favor of [Spring Creek] constitutes an unconstitutional application of 38–18.1." A party challenging the constitutionality of a statute must bring up the "heavy artillery." *Allied Mutual Ins. Co., v. Director, North Dakota Dep't of Transp.*, 1999 ND 2, ¶ 7, 589 N.W.2d 201. The "heavy artillery" is necessary to overcome a strong presumption of the statute's constitutionality. *Id.*[2] The successors failed to bring up the "heavy artillery" to the trial court, or to this court, and we therefore decline to address the constitutional issue.

## V.

[¶ 22] The successors have raised additional issues on appeal. However, disposition of those issues is not necessary because the issues will not likely arise on remand. *Loberg v. North Dakota Workers Comp. Bureau*, 1998 ND 64, ¶ 12, 575 N.W.2d 221.

## VI.

[¶ 23] Whether Spring Creek made a reasonable inquiry to ascertain the addresses of the mineral interest owners is a question of fact and inappropriate for summary judgment. The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

[¶ 24] VANDE WALLE, C.J. and MARING, NEUMANN and SANDSTROM, JJ., concur.

**2.** The United States Supreme Court discussed the "heavy artillery" necessary to attack the constitutionality of a similar Indiana Dormant Mineral Lapse Act in *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). Despite the "heavy artillery," the Supreme Court rejected the appellant's argument and held the statute was constitutional. *Id.* at 540, 102 S.Ct. 781.